CLARK, Justice.[1]
hWe granted certiorari in these three consolidated writ applications to determine whether the lower courts correctly applied *825 the standards for analyzing class action certification set forth in La. C.C.P. art. 591, et seq. After reviewing the record and the applicable law, we find the lower courts erred in concluding the plaintiff satisfied the threshold requirement of numer-osity, necessary for class certification. Accordingly, we reverse the judgment of the district court which granted plaintiffs motion for class certification.
FACTS AND PROCEDURAL HISTORY
Sometime in April of 2010, the plaintiff in this matter, Jane Doe,[2] was contacted by detectives in the Baton Rouge Police Department and asked to identify whether she was the subject of a photograph, obtained from a video, captured by a pen camera which had been surreptitiously placed in the women’s 12shower/changing room of a fitness center in downtown Baton Rouge, Louisiana.[3] The plaintiff was a member of a gym called “Anytime Fitness,” a fitness center owned by Southern Gyms, LLC (“Southern Gyms”). Southern Gyms purchased a franchise for the fitness center from an out-of-state corporation known as Anytime Fitness, Inc.[4] The plaintiff identified herself for police as the woman in the photograph.
Further investigation by police revealed that an assistant manager and trainer at the fitness center, Terry Telschow (“Tel-schow”), secretly videotaped the plaintiff and other women in the women’s shower/changing room of the gym. The police told the plaintiff her image was one of four women discovered on the pen camera when the pen camera was turned over to police on April 5, 2010. Telschow was arrested on April 23, 2010, and was prosecuted for video voyeurism. He ultimately pleaded guilty to four counts of video voyeurism — one count for each of the four women whose images were found on the pen camera — and was sentenced to a nine month term of imprisonment.
On June 25, 2010, plaintiff filed a pleading entitled “Class Action Petition for Damages” in Evangeline Parish on behalf of herself and others similarly situated.[5] *826 Made defendants in the action were Tel-schow; Southern Gyms; Anytime | ¡jFitness; and Southern Gyms’ insurer, later identified as Lexington Insurance Company. The plaintiff alleged causes of action in negligence against Southern Gyms, Anytime Fitness, and its employees for failing to properly supervise its employees and in failing or neglecting to protect its patrons from the criminal acts of others. In addition, the plaintiff directed allegations of invasion of privacy and intentional infliction of emotional distress toward Telschow, individually.
A hearing on the motion for class certification was held on August 5, 2011. Tel-schow’s deposition was admitted into evidence without objection. In his deposition, Telschow stated he placed the pen camera in the women’s shower/changing room at the gym on 10-15 days between mid-November of 2009 until the pen camera was discovered on April 5, 2010. On each of these days, the pen camera would record from 1-2 hours. There were many days he would fail to obtain any images, since the camera angle would be wrong. However, in addition to the images of the four women found on the pen camera by police on April 5, 2010, Telschow admitted he had videotaped at least five other women in various stages of undress, and about 20 women doing non-intimate things like washing their hands or face, or combing their hair. Telschow stated he erased the video images after he viewed them; thus, the only videotapes which remained on the pen camera were of the four women found by police, which Telschow never saw. Tel-schow denied ever downloading the images of women videotaped to his computer or sending them to others.
The plaintiff testified in person at the hearing, describing how she found out from the police that she had been surreptitiously videotaped. The plaintiff explained her willingness to be class representative in the proceeding and her general knowledge about the suit. She introduced into evidence a “Club Usage Report,” which showed all of the members (men and women) who used the gym ^between November 2, 2009 and February 8, 2010, based on the key swipe system for entrance into the fitness center.[6]
The parties’ memoranda, including exhibits, were also admitted in evidence. One of the exhibits to a defense memorandum was a copy of the bill of information charging Telschow with four counts of video voyeurism.[7] The defendants also introduced copies of two separate lawsuits filed in East Baton Rouge Parish against them by two other women who were videotaped by Telschow on April 5, 2010. At the conclusion of the hearing, the district judge took the question of class certification under advisement and requested post-hearing briefs.
The hearing on the motion for class certification was again heard on August 24, 2011, in connection with the defendants’ motion to transfer for forum non conve-niens. Although the district judge expressed doubt as to the correctness of proceeding with the case as a class action due to the speculative nature of the plaintiffs evidence of other aggrieved parties, he decided to err on the side of caution and certify the class. In a judgment on the motion for class certification signed on *827 September 21, 2011, the district judge defined the class as:
All females who physically entered the women’s restroom/locker room/changing room at Anytime Fitness, 200 Government Street, Baton Rouge, Louisiana 70802, from November 1, 2009, through and including April 5, 2010.
Defendants appealed the ruling to the court of appeal, arguing the plaintiff failed to bear her burden of proving that class certification, under La. C.C.P. art. 591 et seq., was the proper procedural vehicle for maintaining this action. The main focus of the defendants’ argument was their assertion the plaintiff failed to prove the threshold requirement of showing the class was so numerous as to make joinder impractical.
IsThe court of appeal disagreed with the defendants’ assertions and affirmed the district court’s ruling.[8] The appellate court noted Anytime Fitness, the franchisor, was “a nationwide business entity which allows its members to use any location, nationwide;” therefore, the appellate court believed “there is potential for aggrieved parties to be located not only in Louisiana, but other states as well and, certainly, from areas outside of Baton Rouge, Louisiana.”[9] As to the threshold requirement of numerosity, the court of appeal stated:
The number of women provided by Doe and the various potential locations of aggrieved parties provide a basis for the trial court to find that the lack of a class action could unduly burden the courts and joinder of all interested parties is impractical. Given the above and our directive of erring on the side of maintaining the class action because the judge may always modify or amend the class at any time prior to a decision on the merits, we find no abuse of discretion by the trial court in ruling that Doe has met the numerosity requirement.[10]
Likewise, the court of appeal found no abuse of discretion by the trial court in its conclusions as to any of the other threshold requirements of class certification. Concluding there was no error by the trial court in certifying the class, the appellate court found no merit to the defendants’ arguments and affirmed.[11]
We consolidated and granted the defendants’ separate writ applications to review the judgments of the lower courts and, in particular, to examine whether those courts engaged in the rigorous analysis required to determine whether this action meets the requirements imposed by law for class action certification.[12]
JüLAW

General Class Actions Law

In Ford v. Murphy Oil U.S.A., Inc., 1996-2913, p. 4 (La.9/9/97); 703 So.2d 542, 544, we said:
[t]he class action is a nontraditional litigation procedure permitting a represen *828 tative with typical claims to sue or defend on behalf of, and stand in judgment for, a class of similarly situated persons when the question is one of common or general interest to persons so numerous as to make it impracticable to bring them all before the court. See Herbert B. Newberg & Alba Conte, 1 Newberg on Class Actions, § 1.10, p. 1-2, 1-3 (3d ed.1992). The purpose and intent of class action procedure is to adjudicate and obtain res judicata effect on all common issues applicable not only to the representatives who bring the action, but to all others who are “similarly situated,” provided they are given adequate notice of the pending class action and do not timely exercise the option of exclusion from the class action.
Introduced into Louisiana civil procedure in 1961 and modeled after original Federal Rule 23, the Louisiana class action procedure has since been extensively revised. See Ford, 1996-2913, p. 5; 703 So.2d at 545; Dupree v. Lafayette Ins. Co., 2009-2602, p. 5 (La.11/30/10); 51 So.3d 673, 679. The code of civil procedure articles governing class actions which control the present action, found in La. C.C.P. art. 591 et seq., essentially adopt current federal law regulating class actions under Fed. Rule Civ. Proc. 23 and codify this court’s prior class certification jurisprudence. Price v. Martin, 2011-0853, p. 6 (La.12/6/11); 79 So.3d 960, 966; Dupree, 2009-2602, p. 5; 51 So.3d at 679. To the extent La. C.C.P. art. 591 parallels Federal Rule 23 regarding class actions, the analysis of Louisiana’s class certification is appropriately informed by federal jurisprudence interpreting Federal Rule 23. See Price, 2011-0853, p. 7 n. 6; 79 So.3d at 967 n. 6; Dupree, 2009-2602, p. 14 n. 8; 51 So.3d at 684 n. 8.
The threshold requirements for class certification are found in La. C.C.P. art. 591(A), which provides:
A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
|7(1) The class is so numerous that joinder of all members is impracticable.
(2) There are questions of law or fact common to the class.
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
(4) The representative parties will fairly and adequately protect the interests of the class.
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
Each of these requirements must be met for an action to be maintained as a class action; failure to meet one of these threshold requirements precludes class certification. La. C.C.P. art. 591(B).[13]
*829 |rA rigorous analysis must be used to determine whether a class action meets the requirements imposed by law, since this procedural device is an exception to the rule that litigation be conducted by and on behalf of the individually named parties only. Brooks v. Union Pacific R. Co., 2008-2035, p. 10 (La.5/22/09); 13 So.3d 546, 554; see Wal-Mart Stores, Inc. v. Dukes, — U.S. -, 131 S.Ct. 2541, 2550, 180 L.Ed.2d 374 (2011); Price, 2011-0853, p. 6; 79 So.3d at 966. Such an analysis requires the district court to
evaluate, quantify and weigh [the relevant factors] to determine to what extent the class action would in each instance promote or detract from the goals of effectuating substantive law, judicial efficiency, and individual fairness. Upon arriving at an estimate of the class action’s overall effectiveness in furthering the intertwined goals, the court must compare this with its assessment of the effectiveness of other adjudicatory methods and decide whether the class action is the superior procedural device.
McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d 612, 618 (La.1984). In doing so, “the trial court must actively inquire into every aspect of the case and should not hesitate to require showings beyond the pleadings.” Id.
“Class action rules do not set forth a mere pleading standard; rather, a party seeking class certification must affirmatively demonstrate his compliance with the [class action requirements] — that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.” Price, 2011-0853, p. 7; 79 So.3d at 967, citing Wal-Mart Stores, Inc., 131 S.Ct. at 2551 (emphasis in original, internal quotations omitted). Frequently, the “rigorous analysis” required to make the class certification determination “will entail some overlap with the merits of the plaintiffs underlying claim.” Wal-Mart Stores, Inc., 131 S.Ct. at 2551; see Price, 2011-0853, p. 6; 79 So.3d at 967. This overlap into the merits is not unusual or unexpected. “Going beyond the pleadings *830 is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.” Dupree, 2009-2602, p. 7; 51 So.3d at 680, citing Castano v. American Tobacco Co., 84 F.3d 734, 744 (5th Cir.1996).
In reviewing a class certification, the trial court’s factual findings are subject to the manifest error standard; however, the ultimate decision of whether or not to certify the class is reviewed under an abuse of discretion standard. Price, 2011-0853, p. 7-8; 79 So.3d at 967; Dupree, 2009-2602, p. 7; 51 So.3d at 680; Brooks, 2008-2035, p. 10; 13 So.3d at 554. “Implicit in this deferential standard is recognition of the essentially factual basis of the certification inquiry and of the district court’s inherent power to manage and control pending litigation.” Dupree, 2009-2602, p. 7; 51 So.3d at 681; Brooks, 2008-2035, p. 11; 13 So.3d at 554 (internal citations omitted). Whether the district court applied the correct legal standard in determining whether to certify the class is reviewed de novo. Price, 2011-0853, p. 8; 79 So.3d at 967; Brooks, 2008-2035, p. 11; 13 So.3d at 554.
The party seeking to maintain the class action has the burden of proving that all of the statutory class certification criteria have been satisfied. Price, 2011-0853, p. 9; 79 So.3d at 968; Dupree, 2009-2602, p. 10; 51 So.3d at 682. In this case, the plaintiff was first required to prove all five threshold prerequisites of La. C.C.P. art. 591(A) were met. Those prerequisites are generally referred to as numerosity, commonality, typicality, adequacy of representative parties, and objectively definable class. Price, 2011-0853, p. 9; 79 So.3d at 968; Dupree, 2009-2602, p. 10; 51 So.3d at 682. For reasons explained more fully below, we find the district court erred in ruling the plaintiff met her burden of proving the class was so numerous that joinder of all members was impracticable. Accordingly, we find the trial court abused its discretion in certifying the class.
In Price, we granted certiorari to examine whether the rigorous analysis required in the determination of class certification was performed by the district court, especially with regard to the requirement of commonality. Here, we examine whether the same rigorous analysis was applied to the determination of numerosity, another of the threshold requirements for class certification.

Numerosity

Representative class members may sue if “[t]he class is so numerous that joinder of all members is impracticable.” La. C.C.P. art. 591(A)(1). Although referred to as the “numerosity” requirement, it is important to note that this prerequisite is not based on the number of class members alone. The requirement of nu-merosity is followed by, and must be considered with, the core condition of this requirement — that joinder be impracticable. See 1 William B. Rubenstein, Alba Conte, Herbert B. Newberg, Newberg on Class Actions, § 3:11, p. 186 (5th ed.2011).
Although this court has not had the opportunity recently to explain the parameters of the numerosity requirement, the law is well-developed in the courts of appeal. This element is determined based upon the facts and circumstances of each individual case. Galjour v. Bank One Equity Investors-Bidco, Inc., 2005-1360, p. 10 (La.App. 4 Cir. 6/21/06); 935 So.2d 716, 724; Chiarella v. Sprint Spectrum LP; 2004-1433, p. 18 (La.App. 4 Cir. 11/17/05); 921 So.2d 106, 119, writ denied, 2005-2539 (La.3/31/06); 925 So.2d 1263; Davis v. Jazz Casino Co., L.L.C., 2003-0005, p. 7 (La.App. 4 Cir. 1/14/04); 864 So.2d 880, *831 887, writ denied, 2004-0572 (La.4/23/04); 870 So.2d 304; Davis v. American Home Products Corp., 2002-0942, p. 19 (La.App. 4 Cir. 3/26/03); 844 So.2d 242, 257, writ denied, 2003-1180 (La.6/27/03); 847 So.2d 1279; Singleton v. Northfield Ins. Co., 2001-0447, p. 10 (La.App. 1 Cir. 5/15/02); 826 So.2d 55, 62, writ denied, 2002-1660 (La.9/30/02); 825 So.2d 1200; West v. G & H Seed Co., 2001-1453, p. 10 (La.App. 3 Cir. 8/28/02); 832 So.2d 274, 282; Billieson v. City of New Orleans, 98-1232, p. 11 (La.App. 4 Cir. 3/3/99); 729 So.2d 146, 154; Pulver v. 1st Lake Properties, Inc., 96-248, p. 5 (La.App. 5 Cir. 9/18/96); 681 So.2d 965, 968; Olavarriette v. Tonti Properties, Inc., 95-0151, p. 3 (La.App. 5 Cir. 6/28/95); 658 So.2d 25, 26; Lewis v. Roemer, 94-0317, p. 5 (La.App. 4 Cir. 9/29/94); 643 So.2d 819, 822.
In keeping with the fact this is an impracticability of joinder rule, and not merely a numbers requirement, there is no strict numerosity threshold. In other words, there is no set number above which a class is considered to have satisfied this requirement. Davis, 2003-0005, p. 7; 864 So.2d at 888; Davis, 2002-0942, p. 19; 844 So.2d at 257; Singleton, 2001-0447, p. 10; 826 So.2d at 62; West, 2001-1453, p. 10; 832 So.2d at 282; Billieson, 98-1232, p. 11; 729 So.2d at 154; Olavarriette, 1995-151, p. 3; 658 So.2d at 27; Farlough v. Smallwood, 524 So.2d 201, 203 (La.App. 4 Cir.), writ denied 526 So.2d 810 (1988).
This condition is not met by simply alleging that a large number of potential claimants exist. West, 2001-1453, p. 10; 832 So.2d at 282; Singleton, 2001-0447, p. 10; 826 So.2d at 63; Johnson v. Orleans Parish School Bd., 2000-0825, p. 7 (La.App. 4 Cir. 6/27/01); 790 So.2d 734, 741, writ denied, 2001-2216, 2001-2225 (La.11/9/01); 801 So.2d 378 and 2001-2215 (La.11/9/01); 801 So.2d 379; Hampton v. Illinois Cent. R. Co., 98-0430, p. 8 (La.App. 1 Cir. 4/1/99); 730 So.2d 1091, 1094-1095; Johnson v. E.I. Dupont deNemours & Co., Inc., 98-0229, p. 6 (La.App. 5 Cir. 10/14/98); 721 So.2d 41, 44; Carr v. GAF, Inc., 97-0838, p. 8 (La.App. 1 Cir. 4/8/98); 711 So.2d 802, 806, writ denied, 98-1244 (La.6/19/98); 721 So.2d 472; Pulver, 96-0248, p. 5; 681 So.2d at 968. Rather, a party must show that joinder is impractical and there is a definable group of aggrieved persons. Davis, 2002-0942, p. 19; 844 So.2d at 257; West, 2001-1453, p. 10; 832 So.2d at 282; Hampton, 98-0430, p. 8; 730 So.2d at 1095; Johnson, 98-0229, p. 6; 721 So.2d at 44; Pulver, 96-0248, p. 5; 681 So.2d at 968; Olavarriette, 1995-0151, p. 3; 658 So.2d at 26; Farlough, 524 So.2d at 203.
While there must be proof of a definable group of aggrieved persons, a plaintiff is not required to identify every member of the potential class prior to certification. McCastle, 456 So.2d at 620; Galjour, 2005-1360, p. 9; 935 So.2d at 723-724; Chiarella, 2004-1433, p. 19; 921 So.2d at 119; Davis, 2003-0005, p. 7; 864 So.2d at 888; Davis, 2002-0942, p. 19; 844 So.2d at 257; West, 2001-1453, p. 10; 832 So.2d at 282; Singleton, 2001-0447, p. 10; 826 So.2d at 62; Billieson, 98-1232, p. 11; 729 So.2d at 154; Lewis, 94-0317, p. 5; 643 So.2d at 822.
Although not as well-developed or relied on as the preceding guidelines, various other factors have developed in the jurisprudence for determining the practicality of joinder of a large number of potential class members, including: (1) the geographic dispersion of the class; (2) the ease with which class members may be identified; (3) the nature of the action; (4) the size of the individual claims; (5) judicial economy in avoiding a multiplicity of lawsuits; and (6) financial resources of class members. See Galjour, 2005-1360, *832 p. 10; 935 So.2d at 724; Davis, 2003-0005, p. 7; 864 So.2d at 888. We find these factors may also inform a district court’s determination whether the proposed class has a sufficient number of members so that joinder is impracticable.
DISCUSSION
At the first hearing on the motion for class certification, the district judge expressed concern the plaintiff failed to present sufficient proof of the threshold requirement of numerosity. The district judge continued to have those concerns 1 isafter the matter was argued a second time before him. In ruling, the district judge noted he was aware he could decer-tify the class in the future, and stated:
That’s the issue whether we have enough people to make it worthwhile. And I guess the best thing to protect these people is I’m gonna err on the side of caution. I’ll certify this, but I’m going to leave the door open because I am very aware of the fact that I can decertify it.... [Judge tells plaintiffs counsel he must find some way to show there are more than four aggrieved parties] ... Cause if they come back and say there’s no people and they’ve got something to back that up and you don’t have anything to show that there are [sic; is] no one other than those that are aggrieved other than the four, I’m gonna decertify this. I’m telling you I’m leaning. This is a very weak certification in my opinion. And if written reasons are required, I am ruling and finding as a finding of fa[c]t that because of the claim ... this particular type of claim where we’ve got this person filming, we don’t know how long he filmed, how many people he filmed. The potential emotional distress cause[d] by that will satisfy the numerosity if those people are shown to have damages. But I’m gonna classify it at this point to protect their rights. And all of the factors enumerated in the Code of Civil Procedure Article 591 have been met in my opinion.[14]
The court of appeal also noted its “directive of erring on the side of maintaining the class action because the judge may always modify or amend the class at any time prior to a decision on the merits....”[15]
We initially find the court of appeal failed to appreciate the district court’s determination as to numerosity was a factual one. The court of appeal should have reviewed that factual determination for manifest error, rather than an abuse of discretion. Moreover, all of the district court’s determinations regarding the threshold requirements to class certification were factual ones, which should have been reviewed for manifest error.
Further, in failing to subject plaintiffs evidence to the rigorous analysis required by law, and in certifying a class when the evidence failed to show there were, in fact, a sufficient number of other aggrieved parties to make joinder impracticable, the lower courts failed to heed our directive, often-repeated, in Brooks, Dupree, and Price. We reiterate that instruction here:
To the extent that language in McCastle, particularly the statement that “[i]f there is to be an error made, it should be in favor and not against the maintenance of the class action” McCastle, 456 So.2d at 620, has been interpreted by courts as relaxing the plaintiffs’ burden in establishing the appropriateness of the class action for a particular case or *833 the court’s role in evaluating whether the required statutory showing has been met, it has been misinterpreted. This general rule does not obviate the requirement that courts employ a “rigorous analysis” and take a “close look” at a case to determine if, in fact, the statutory requirements have been satisfied before accepting it as a class action.[16]
With this directive in mind, we will review the evidence introduced by plaintiff at the class certification hearing and review the arguments presented in favor of that procedure. Plaintiff argued she did not need a videotape to maintain an action for invasion of privacy. In other words, the fact that Telschow deleted or erased the videotapes he had taken of women in the shower/changing room did not prohibit proceeding as a class action. The plaintiff claimed she presented evidence that approximately 250-S00 women were affected by the common event of Telschow’s illegal videotaping.
Louisiana recognizes the tort of invasion of privacy, which “is directed at redressing the damage which an individual suffers when legally recognized elements of his right to privacy have been violated.” Tate v. Woman’s Hosp. Foundation, 2010-0425, p. 3-4 (La.1/19/11); 56 So.3d 194, 197. One of the four ways in which the tort of invasion of privacy may occur is when a person “unreasonably intrudes on [someone’s] physical solitude or seclusion.” Tate, 2010-0435, p. 4; 56 So.3d at 197.
In her argument, the plaintiff distinguishes two cases with somewhat similar facts. In the first case, Meche v. Wal-Mart Stores, 96-0981 (La.App. 3 Cir.3/5/97); 692 So.2d 544, writ denied, 97-0888 (La.5/9/97); 693 So.2d 760, cert. denied, 522 U.S. 1002, 118 S.Ct. 574, 139 L.Ed.2d 413 (1997), an overly zealous | lsWal-Mart security employee placed a closed circuit television camera in the ceiling of a unisex employee restroom. Testimony established the receiver had never been connected to either a monitor or a recording device and no one had viewed or taped anyone in the restroom. The camera, in place for three days only, was immediately removed upon discovery. Id., 96-0981, p. 3-4; 692 So.2d at 546. The jury .rejected the employees’ claims of invasion of privacy. Id., 1996-0981, p. 2; 692 So.2d at 545. On appeal, the employees objected to the jury instruction which required a viewing or recording of one of the plaintiffs in the restroom to prove that claim. The court of appeal affirmed the jury’s decision, finding no clear error in the court’s instruction, as Louisiana law does not recognize an attempted invasion of privacy. Id.
Here, plaintiff contends the proposed class is not presenting a claim for attempted invasion of privacy.[17] Telschow testified in his deposition that he actually obtained and viewed videotapes of women in the shower/changing room of the fitness center. The plaintiff argues, in this case, actual invasions of privacy occurred.
The plaintiff also distinguishes the case of Smith v. Wal-Mart Stores, Inc., 2003-1582 (La.4/7/04); 870 So.2d 531, writ denied, 2004-1146 (La.6/25/04); 876 So.2d 845. In Smith, a class was certified, consisting of female customers who could prove they used a restroom where a surveillance camera had been placed. Unlike Smith, where the proposed class members will know whether they entered the cus *834 tomer’s restroom between certain days, the plaintiff argues the potential class members here will never know whether they are on videotape. Insofar as this position seeks to lessen the plaintiffs burden of proof on class certification, it is unavailing.
| ifiTelschow’s deposition testimony shows he started placing the pen camera in the women’s shower/changing room at the fitness center in mid-to-late November of 2009. He would place the camera in the room when he entered to clean. He testified he placed the camera on 10-15 days, for 1 to 2 hours of videotaping on each attempt. He claimed there was much trial and error involved in the placement of the camera, and that he rarely obtained a viewable image. There are no records of which particular days Telschow worked at the fitness center; he was paid based on the total hours he worked. Telschow only operated the pen camera when he was physically on the premises.
Telschow claimed there were a total of five different women he captured on videotape in some stage of undress which he observed. Added to this number are the images of the four women retrieved from the hard drive of the pen camera by the police when the device was turned over to them.[18] Approximately 20 women were videotaped performing routine tasks such as washing their face or hands, or brushing their hair.[19] Except for the videotape with the four women discovered on the camera by police, all of the other videotapes were deleted by Telschow. He claimed he never shared the images with anyone, never posted the images on the internet, and did not keep those images on any other device. Telschow stated the police seized his home computer and checked it for any illegally-obtained images. He assumes none were found because he was not prosecuted for any other incidences. Telschow only knew one of the women he videotaped, who was a client whom he trained.[20] Otherwise, Telschow does not know any of the women he videotaped, does not remember any of them, and would not be able to identify |17or recognize any of them.
Although the plaintiff testified that she probably entered the women’s shower/changing room each time she went to the fitness center, she did not know whether every other woman who entered the gym did so. She had no knowledge about any other women who were captured on videotape by Telschow. She did not know how many other women were videotaped. She did not know how many days, or on which days, Telschow operated the pen camera in the women’s shower/changing room. She had no information or knowledge about any damages or injuries suffered by any other woman who went to the gym between November of 2009 and April 5, 2010. The plaintiff never saw any videotape evidence of any other woman, although she was told by police that three other women were videotaped the same day she was. She understood the police recovered all the deleted files from the pen camera. She understood Telschow was prosecuted for what was found on the camera, and that the formal charges were four counts of video voyeurism. She never spoke to anyone at the gym about being *835 videotaped and does not know any of the other women who were videotaped. The plaintiff was not aware that two other women filed suit in East Baton Rouge Parish against the defendants.
At the class certification hearing, the plaintiff bore the burden of proving that there were a sufficient number of aggrieved parties, in fact, such that join-der was impracticable. The plaintiff failed to present evidence that would support this threshold requirement.
Although the party seeking class certification does not have to identify each class member at the certification hearing, an aspect of presenting evidence of a defined group of aggrieved persons includes the fact that those persons are identifiable in some way. See e.g. Singleton, 2001-0447, p. 11; 826 So.2d at 68 (documents established there were several hundred known individuals who were 118potentially damaged by an oil well blowout); Davis, 2002-0942, p. 20; 844 So.2d at 257-258 (the class was definable and could be easily identified because the class had been surgically implanted with a contraceptive device, the subject of the class action lawsuit); Billieson, 98-1232, p. 11-12; 729 So.2d at 154-155 (potential class members identifiable by extensive documentation of the number of children in public housing and inspections of housing units for presence of lead every time a child tested positive for lead in routine screening).
The evidence adduced at the class certification casts doubt on the fact that any women, other than the four whose images were found by police, will ever be aware they were videotaped by Telschow. Tel-schow could not identify any of the women he videotaped, other than the one whom he trained. He claims the other videotapes are deleted. Although the plaintiff speculates otherwise, there was no evidence to show that any of the deleted videotapes exist. See Meche, 96-0981, p. 6; 692 So.2d at 547 (plaintiffs’ allegations were rejected where defendants presented testimony no videotapes were ever made and plaintiffs disputed that contention).
On the one hand, the plaintiff wants Telschow’s testimony credited when he states he obtained videotapes of several women; however, the plaintiff does not believe his testimony that those videotapes were never shared and were deleted (other than the four which were discovered on the pen camera on the day of its discovery). Only in this way can the plaintiff contend, in the absence of proof, that there may be other videotapes which may surface at some later time. Such speculation has no place where proof is required.
While we agree with the plaintiff there is no requirement of the existence of a videotape to prove an invasion of privacy under these circumstances, and we find the actions of Telschow to be reprehensible and criminal, those facts do not change the requirement of proof at a class certification hearing or convince us that a class 119action is a superior method of maintaining this suit. The plaintiff in this case testified she had no evidence of any damage or injuries suffered by others and no evidence of a causal link between Tel-schow’s actions and any purported damages. Failing to present evidence of a definable group of aggrieved persons, the plaintiff fails to prove a sufficient number of persons exist which make joinder impracticable. In fact, the evidence adduced showed joinder would be an efficient manner to proceed with this lawsuit. Of the nine women for whom there is some evidence that they were videotaped by Tel-schow, three of them, including the plaintiff, have filed their own lawsuits.
CONCLUSION
For the reasons set forth above, we conclude the district court manifestly *836 erred in finding the threshold requirement of La. C.C.P. art. 591(A)(1) — the class is so numerous that joinder of all members is impracticable — was proved. As a consequence, we find the district court abused its discretion in accepting this matter as a class action and in certifying the class. We therefore reverse the appellate court’s judgment affirming the district court’s class action certification, reverse the district court’s ruling granting the motion for class certification and certifying the class, and remand the case for further proceedings.
REVERSED AND REMANDED.
Justice JEFFERSON D. HUGHES III was assigned as Justice pro tempore sitting for KIMBALL, C.J. for oral argument, and sits as an elected Justice at the time this opinion is being rendered.

. Justice Jefferson D. Hughes III was assigned as Justice pro tempore sitting for Kim-ball, C.J. for oral argument, and sits as an elected Justice at the time this opinion is being rendered.

. Due to the nature of the allegations of the petition, which make reference to the plaintiff as a victim of a sex offense, the plaintiff has been referred to throughout this case by the pseudonym “Jane Doe,’’ pursuant to La. R.S. 46:1844(W).

. The fitness center is located in East Baton Rouge Parish, which is in the 19 th Judicial District.

. The name of the fitness center in Baton Rouge is the same as the name of the foreign corporation which sold the fitness center franchise to Southern Gyms. In this opinion, “Anytime Fitness” will henceforth refer to the foreign corporation. To avoid confusion, the fitness center will not again be referred to by its name.

. Exceptions of improper venue were denied by the district court. Lower court judgments denying the defendants’ motion to transfer for fomm non conveniens were reversed by this court and the matter was transferred to the 19th Judicial District Court in East Baton Rouge Parish. See Doe v. Southern Gyms, L.L.C., 2012-0448 (La.5/4/12); 88 So.3d 447. The court of appeal opinion we review here originates as the appeal from the original district court’s granting of the motion for class certification. This appellate judgment was rendered after our decision to transfer the matter to a different district court (with a different appellate court), but before that decision became final. Recognizing this court would have supervisory jurisdiction over the question of class certification whether the appeal arose out of the transferee appellate court or the transferor appellate court, we decide the issue presented for the sake of judicial efficiency, rather than remand to have the question of class certification tried anew in the transferee district court. Consequently, we do not reach the defendants' assignment of error regarding the court of appeal's authority to render the decision we are reviewing.

. Although counsel stated the report covered from November 2, 2009 through April 5, 2010 (the date the pen camera was discovered), the report shows the computer printout of sequential days ends with February 8, 2010.

. The four women were identified on the bill of information by their initials.

. Doe v. Southern Gyms, LLC, 2012-0140 (La.App. 3 Cir. 6/6/12); 92 So.3d 654.

. Doe, 2012-0140, p. 5-6; 92 So.3d at 659. We note the Club Usage Report indicates when members from other franchises in other geographic areas took advantage of reciprocal membership. The areas where these members originate are noted on the computer printout. Our review shows the gym in Baton Rouge was used by persons with memberships in other gyms from around the state, and by a few people from outside the state.

. Id.

. Id., 2012-0140, p. 7-8; 92 So.3d at 660.

. Doe v. Southern Gyms, LLC, 2012-1566 (La.11/21/12); 102 So.3d 47 c/w 2012-1572 (La.11/21/12); 102 So.3d 48 c/w 2012-1580 (La.11/21/12); 102 So.3d 48.

. Once the threshold requirements of Section (A) are met, the party requesting class certification must satisfy additional requirements found in La. C.C.P. art. 591(B). Section (B) of the article provides:
B. An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:
(1) The prosecution of separate actions by or against individual members of the class would create a risk of:
(a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(b) Adjudications with respect to individual members of the class which would as a *829 practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular forum;
(d) The difficulties likely to be encountered in the management of a class action;
(e) The practical ability of individual class members to pursue their claims without class certification;
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation; or
(4)The parties to a settlement request certification under Subparagraph B(3) for purposes of settlement, even though the requirements of Subparagraph B(3) might not otherwise be met.
[[Image here]]

. R. Vol. 3, p. 524-525.

. Doe, 2012-0140, p. 6; 92 So.3d at 659.

. Price, 2011-0853, p. 7 n. 8; 79 So.3d at 967 n. 8.

. This assertion would seem to eliminate potential claimants who could allege only a fear that an invasion of privacy might have occurred.

. Thus, the plaintiff presented evidence that only a total of nine women were videotaped in various stages of undress.

. Even if these women could be identified to present their claims, we do not find under these circumstances that 29 proposed class members would make joinder impracticable.

.The record shows this woman is one who has filed a separate suit against the defendants in the 19th Judicial District.