CHAISSON, J. | iPlaintiffs, who are homeowners on Elizabeth Street in Metairie, brought this action for damages allegedly caused to their homes by heavy trucks using their street during an 1-10 construction project in 2013. Homeowners Richard Bagot, Joan Bagot, Mark Guillote and Lashan Guillote brought this suit as putative class representatives against James Holdings, L.L.C., Volkert, Inc., Three C’s Properties, State of Louisiana Department of Transportation, and Lefarge North America seeking class certification for all property owners on Elizabeth Street whose properties were similarly damaged. Defendants now appeal a September 1, 2016 judgment of the trial court which granted plaintiffs’ motion for class certification. For the following reasons, we vacate the judgment of the trial court and remand this case for further proceedings. ' FACTS AND PROCEDURAL HISTORY On January 10, 2014, plaintiffs filed a class action petition wherein they alleged that defendants caused them property damage, diminution of property value, mental anguish, and emotional distress due to the constant vibrations and impact of heavy trucks travelling to and from the construction site of an 1-10 widening project over the course of approximately nine months in 2013. The petition specifically sets forth causes of action under claims of negligence, inverse condemnation, and negligence per se. defendants filed their answer to the petition wherein they denied plaintiffs’ allegations. Following a period of discovery, on August 24 and 25, 2016, the trial court held a hearing on the motion for class certification filed by plaintiffs. At the hearing, the trial court heard testimony from putative class representatives Richard Bagot, Joan Bagot, Mark Guillote, and Lashan Guillote, as well as four engineering experts. Following the hearing, the trial court granted plaintiffs’ motion for class certification, which ruling is reflected in its written judgment of ^September 1, 2016.[1] The trial court assigned as reasons for judgment those statements made from the bench at the end of the hearing on the motion to certify the class, wherein the trial judge made the following particular findings: 39 to 40 potential plaintiffs creates a presumption that joinder would be impractical; testimony at the hearing established adequacy of class representation and de-finability, particularly in that the class would be limited in geographical area to homeowners with lots on or adjacent to Elizabeth Street between I—10 and Veterans Memorial Boulevard for the period beginning February 1, 2013, and ending December 31, 2013; and there exist common questions of law and fact between all potential plaintiffs in that all of the homes' in question sit on the same soil, are of the same construction, and are all of equal distance from the road. The trial court found that plaintiffs met their burden by a preponderance of the evidence, and proceeded to ■ certify the class, noting that certification could change in the future as more facts become known. No findings were made regarding whether the questions of law or fact common to members of the class predominated over any questions affecting only individual members or whether the class action is superior to other available methods for the fair and efficient adjudication of the controversy. In their timely filed appeal, defendants raise the following assignments of error: 1) The trial court erred in finding plaintiffs met their burden of proof regarding threshold requirements of nu-merosity, commonality, typicality and adequacy of representation as required under La. C.C.P. art. 591(A). 2) The trial court erred in failing to consider the provisions of La. C.C.P. art. 591(B) in determining whether the proposed class meets the requirements for class action certification. We consider these assignments of error in our discussion below. J^DISCUSSION In reviewing a judgment on class certification, the district court’s factual findings are subject to the manifest error standard of review, while the court’s ultimate decision regarding whether to certify the class is reviewed under the abuse of discretion standard. Price v. Martin, 11-853 (La. 12/6/11), 79 So.3d 960, 967. Whether the district court applied the correct legal standard in determining whether to certify the class is reviewed de novo. Id. The only issue to be considered' by the trial eourt when ruling on class certification, and by an appellate court on review, is whether the case at bar is one in which the procedural device is appropriate. Baker v. PHC-Minden, L.P., 14-2243 (La. 5/05/15), 167 So.3d 528, 537. In determining the propriety of such action, the court is not concerned with whether plaintiffs have stated a cause of action or the likelihood they will ultimately prevail on the merits, but whether the statutory requirements have been met. Id. The requirements. for .certification of the class are set forth in La. C.C.P. art., 591, which states, in part: A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if: (1) The class is so numerous that joinder of all members is impracticable. (2) There are questions of law or fact common to the class. (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class. ' (4)' The representative parties will fairly'and adequately protect the interests of the class. (5). The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness' of any judgment that may be rendered in the case. This prerequisite shall not be satisfied if it is necessary for the court to inquire into the 'merits of each potential class member’s cause of action to determine whether an' individual falls within the defined class. Lá. O.C.P. art. 591(A). In addition .to the five elements articulated, in La. C.C.P. art. 691(A), often referred to as the requirements of numerosity, commonality, typicality, adequacy Lof representation, and definability, a plaintiff seeking to certify the class must also satisfy requirements set forth in La. C.C.P. art. 591(B), which states .in pertinent part: B. An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition: [[Image here]] (3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include: (a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions; (b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) The desirability or undesirability of concentrating the litigation in the particular forum; (d) The difficulties likely to be encountered in the management of a class action; (e) The practical ability of individual class members to pursue their claims without class certification; (f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation... The party seeking class certification is responsible for demonstrating that the requirements of La. C.C.P. art. 591 have been met. Whether -a class action meets the requirements imposed by law requires a rigorous analysis. Baker, 167 So.3d at 537; Dupree v. Lafayette Ins. Co., 09-2602 (La. 11/30/10), 51 So.3d 673, 679. In conducting this analysis, the trial court must evaluate, quantify, and weigh the relevant factors to determine to what extent the class action would in each instance promote or detract from the goals of effectuating substantive law, judicial efficiency, and individual fairness. Brooks v. Union Pac. R.R., 08-2035 (La. 5/22/09), 13 So.3d 546, 554. In doing so, the court must actively inquire into every aspect of the case and should not hesitate to require a showing beyond the pleadings. Price, 79 So.3d at 967. In recognition of the essentially factual basis of the certification inquiry and of the district court’s inherent power to manage and | ^control pending litigation, the district court has great discretion in its judgment regarding class certification. Brooks, 13 So.3d at 554. While any errors to be made in deciding class action issues, should, as a general rule, be in favor of and not against the maintenance of a class action because class certification is always subject to modification or decertification if later developments so require, that general rule cannot and should not be used as a substitute for the rigorous analysis required to determine whether the prerequisites of Louisiana’s class action -provisions have in fact been satisfied. Price, 79 So.3d at 967. In this case, the trial court, in its analysis of the numerosity requirement,focused solely on the mathematical number of potential plaintiffs and thereafter. afforded plaintiffs the benefit of a non-existent presumption based upon that number to find that-joinder, was impracticable. As further discussed below, the trial court’s application of this incorrect legal standard mandates that we conduct a de novo review of the evidence presented relevant to the numerosity element in order to determine whether plaintiffs met their burden as to this element. = The parties’ arguments regarding the numerosity element, both before the trial court and this Court, focus largely on whether there are, in fact, 39 to 40 damaged homes- whose owners have potential causes of action. Plaintiffs argue that the numerosity requirement has been satisfied because they provided both documentary evidence in the form of an aerial photograph showing there are approximately 40 homes on or adjacent to Elizabeth Street and testimony from the putative class representatives and an expert witness as proof that there are at least 40 individual claims that are ripe for adjudication arising from the singular course of conduct at issue. Putative class representative Joan Bagot testified that she spoke with several, but not all, of her neighbors, some' of whom stated they did not know if they had suffered damage or not. Only some- of the neighbors she spoke with expressed an interest in filing a claim. Her husband, Richard Bagot, testified! fi that he went door-to-door and spoke to all other homeowners on Elizabeth Street, that all reported to have the same types of damages to their homes.as the Bagots, and that those damages were not there prior to the heavy truck traffic of the I—10 widening project.[2] David O’Reilly, an expert witness in civil engineering, claimed to have observed damage to eleven houses on Elizabeth Street, and though he only performed vibration monitoring testing Outside one home, he theorized that the vibrations from heavy trucks could have caused the same damages to all of the properties along Elizabeth Street. The other putative class representatives, the Guillotes, testified that they knew nothing about damages to other homes on Elizabeth Street other than those of the Bagots and their neighbors directly across the street,' the Revelles.[3] Iri opposition to plaintiffs’ argument that there are at least forty - claims ripe for adjudication arising from this incident, defendants elicited testimony that four homes had transferred ownership since the trucks stopped traveling along Elizabeth Street and that at least one of the homes on the block was rented during the construction period. Defendants introduced three expert witnesses in engineering: David Sauls testified that traffic induced vibrations did not cause the damage to the homes on Elizabeth Street, and that any damage to the homes was related to subsidence and settlement in the soil; Jerry Householder opined that the traffic induced vibrations could not have caused damage to any of the houses on the block; and Walter Zehner testified that the truck vibrations had nothing to do with any evidence of damage he saw on Elizabeth Street, but that such damages were instead caused exclusively by settlement and soil subsidence. |7PIaintiffs have argued, correctly, that they are not required to identify every member of a potential class prior to certification. Doe v. S. Gyms, LLC, 121566 (La. 3/19/13), 112 So.3d 822, 831. However, plaintiffs’ argument and the trial court’s statement that “39 or 40 [potential claims] would create a presumption that joinder is impractical” is legally incorrect. There is no threshold requirement or “magic number” which will render joinder impracticable as a matter of law. Farlough v. Smallwood, 524 So.2d 201, 203 (La. App. 4th Cir. 1988). To this point, in Doe, the Louisiana Supreme Court stated: Representative class members may sue, if “[t]he class is so numerous that join-der of all members is impracticable.” Although referred to as the “numerosity” requirement, it is important to note that this prerequisite is not based on the number of class members alone. The requirement of numerosity is followed by, and must be considered with, the core condition of this requirement-that joinder be impracticable.... In keeping with the fact this is an impracticability of joinder rule, and not merely a numbers requirement, there is no strict nu-merosity threshold. In other words, there is no set number above which a class is considered to have satisfied this requirement. This condition is not met by simply alleging that a large number of potential claimants exist. Rather, a party must show that joinder is impractical and there is a definable group of aggrieved persons. (Citations omitted.) Doe, 112 So.3d at 830-31. Under this reasoning, whether or not plaintiffs have proven that there are 40 potential claims arising from this incident does not in and of itself satisfy the requirement of La. C.C.P. art- 591(A)(1) that plaintiffs prove by a preponderance of the evidence that the class is so numerous that joinder of all members is impracticable. While the trial court’s finding that there were 39 to 40 potential claims is a factual determination that would be reviewed under the manifest error standard of review, the court’s application of a numerosity threshold was a legally incorrect application of the prevailing law and jurisprudence pertaining to La. G.C.P. art. 591(A)(1). We therefore must conduct a de novo review of the | «evidence to determine whether their burden has been satisfied regarding the .numerosity requirement. To establish numerosity is a determination made on the facts and circumstances of each individual case. Farlough, 524 So.2d at 203. Our rigorous analysis of the facts and circumstances in this case is guided by factors adopted by the Supreme Court in Doe that may inform a court’s determination of whether the proposed class has a sufficient number of members so that joinder is impracticable.[4] These factors include: (1) the geographic dispersion of the class; (2) the ease with which class members may be identified; (3) the nature of the action; (4)- the size of the individual claims; (5) judicial economy in avoiding a multiplicity of lawsuits; and (6) financial resources of class members. Doe, 112 So.3d at 831. Geographic dispersion of the class Wide geographic dispersion of class members supports a finding of impracticability of joinder and therefore, a conclusion that the numerosity requirement is satisfied. Galjour, supra at 725. The evidence of this case indicates that the class members are not widely distributed across a large geographic area, but rather narrowly concentrated to specific blocks on a single street in the same neighborhood. Accordingly, this factor supports a finding that joinder would be practical and that the numerosity requirement has not been met. Ease with tvhich- class members may be identified[5] Knowledge of names and existence of members has been called the most important factor because it renders joinder practicable. Id. (citing Primavera Familienstiftung v. Askin, 178 F.R.D. 405, 410 (S.D.N.Y. 1998)). 'When a group is | nsmall and' individual members are identifiable, joinder rarely will be impracticable. Id. On the other hand, difficulty in identifying the claimants makes joinder impracticable and a class action appropriate. Johnson v. Orleans Par. Sch. Bd., 00-0825 (La. App. 4 Cir. 6/27/01), 790 So.2d 734, 742. In this case, over the course of the moré than two-year time span between the initial filing of the litigation and the certification hearing, the class members may have been very easily identified by a simple public records search to determine the homeowners on the few blocks of Elizabeth Street, hr a simple door-to-door inquiry as purportedly done by Mr. Bagot. This factor does not support a finding that the numerosity requirement has been met. Nature of the action Plaintiffs have filed claims under theories of negligence, inverse condemnation, and negligence per se for property damage, diminution of property value, mental anguish, and emotional distress. At least with regard to plaintiffs’ claims for emotional distress and mental anguish, the individualized nature of such claims weigh against the use of the class action mechanism for their resolution. See Howard v. Union Carbide Corp., 04-1035 (La. App. 5 Cir. 2/15/05), 897 So.2d 768, 774. This Court has also found that claims for dimi-nutio.n of value require individualized proof and must be assessed on an individual basis. Defraites v. State Farm Mut. Auto. Ins. Co., 03-1081 (La. App. 5 Cir. 1/27/04), 864 So.2d 254, 261. This factor, therefore, does not support a finding that the numer-osity requirement has been met. Size of each plaintiffs claim and the fi? nancial resources of the class, members The size of the claims of .the members of the class is an important factor in deterr mining whether to maintain a class action, because the class action mechanism provides a means for pursuing numerous claims for small amounts of damages that would otherwise go unredressed. 1 Frank L. Maraist, Louisiana Civil |1flLaw Treatise: Civil .Procedure •§ 4.12, (2008). The financial resources of the class members is also relevant since not all class members may have the financial resources to pursue individual claims for damages, though, “a plaintiffs financial ability concerning tort claims is usually cured by the fact that these, actions can feasibly be undertaken on a contingency fee basis.” Doe v. Univ. Healthcare Sys., LLC, 13-1457 (La. App. 4 Cir. 7/09/14), 145 So.3d 557, 570.[6] Plaintiffs have not introduced any evidence indicating the size of class 'members’ claims or their financial wherewithal to pursue individual litigation. Accordingly, we- conclude that this factor does not support a finding that the joinder of all members in the proposed class would be impracticable. Judicial economy arising from avoiding multiple actions Where a large number of persons have filed or joined suits or otherwise indicated their desire to assert a claim, this factor may weigh in favor of finding that the claims are so numerous that their join-der would be impractical. Galjour, 935 So.2d at 727. For example, in Lailhengue v. Mobil Oil Co., 94-2114 (La. App. 4 Cir. 6/07/95), 657 So.2d 542, the Fourth Circuit upheld a trial court’s certification of a class-action suit where the plaintiffs had presented evidence of the petitions of over 1200 individuals who had filed suit after an oil refinery explosion, - as well as evidence that approximately 1000 additional individuals and businesses had' come forward seeking to assert claims and a total of nine separate lawsuits filed against Mobil as a result of the incident. On the other hand, where there is a large number of potential class members but. few have indicated a dissatisfaction with the defendant or a desire to assert a claim, this factor may weigh against a finding that the claims are so numerous that Intheir joinder would impracticable, Pulver v. 1st Lake Props., 96-248 (La. App. 5 Cir. 9/18/96), 681 So.2d 965. Plaintiffs have not presented any evidence of other lawsuits arising from the I-10 construction project. They also have not presented evidence that there are, in fact, a large number of dissatisfied persons that have come forward over the many years since completion of the I—10 widening project and the filing of’ plaintiffs’ original petition who have expressed an interest in pursuing a claim for damages. Mr. Bagot testified that he spoke to the owners of all 40 houses oh Elizabeth Street and that those persons reported experiencing property damage similar to the Bagots following the construction project. He did not testify whether or not those persons were interested in pursuing claims or seeking redress for those damages. Despite the close geographic proximity. and the ease with which the potential claimants could be identified, none of the putative class representatives testified to speaking to a large number of neighbors who expressed an interest in filing a claim or joining a suit. The evidence presented by plaintiffs suggests. that there are, in fact, a- dozen or fewer persons besides the putative class representatives interested in pursuing claims. This factor therefore weighs against a finding that the claims are so numerous as to make joinder impracticable. In conclusion, applying the Galjour factors to the facts, and circumstances of this case, we find that plaintiffs have failed to show that the class is so numerous that joinder of all members is impracticable as required under La. C.C.P. art. 591(A). This finding pretermits any further discussion of the trial court’s failure to make any specific findings regarding whether the questions of law or fact common to the members of the class predominate over any questions affecting individual members, and that a class action is superior to other available methods of adjudication, except to note that plaintiffs must satisfy by a preponderance of the |, ..evidence all of the requirements of La. C.C.P. art. 591(A) and (B) before a class may be certified. CONCLUSION The trial court legally erred in finding that 39 to 40 potential claims creates a presumption that the class is so numerous that joinder is impractical. Under our de novo review, the evidence presented by plaintiffs does not support a finding that the requirements bf La. C.C.P. art. 591(A) have been met, and therefore the trial court abused its discretion in certifying the class action suit. Therefore, we vacate the judgment granting the motion to certify the class, and remand this case for further proceedings. VACATED AND REMANDED . This judgment defined the class as "[a]ll residential property owners located on Elizabeth Street in Metairie, Jefferson Parish, between Interstate—10 and Veterans Memorial Boulevard for the period beginning February 1, 2013 and ending December 31, 2013.” . On cross-examination, Mr. Bagot, the only witness to testify that there are at least forty individual claims that are ripe for adjudication arising from the incident, also testified that his name was not on the deed to the family home purportedly damaged by the truck vibrations, thereby casting into dpubt whether or not he is in fact a “homeowner” under the definition of class members. . Wilson and Darla Revelle, residents of Elizabeth Street, were listed at putative class representatives in the class action petition, but have since withdrawn as potential class representatives prior to the hearing, and are not listed as class representatives in the trial court’s September 1 judgment certifying the class. . These factors are often referred tó as the ' Galjour factors from the Fourth Circuit case in which they were first articulated, Galjour v. Bank One Equity Inv’rs-BIDCO, Inc., 05-1360 (La. App. 4 Cir. 6/21/06), 935 So.2d 716. . In practice, analysis under this factor may overlap with the definability requirement of La. C.C.P. art. 591(A)(5), though neither party here contends that the proposed class definition is vague. . Analysis under this factor is related to the inquiry under La. C.C.P. art. 591(B)(3). Part (e) of that section states that the "practical ability of the individual class members to pursue their claims without class certification" is one matter pertinent to the court's findings that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.