Judgment rendered March 4, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,219-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ROGER REEVES, SUSAN                          Plaintiffs-Appellees
FULLERTON, HENRY
GREGORY, RODNEY
BROADWAY, ANITA
DARBONNE AND RAY
POWELL

versus

EXPLO SYSTEMS, INC. AND                      Defendants-Appellants
CRUM & FORSTER SPECIALTY
INSURANCE COMPANY

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Webster, Louisiana
Trial Court No. 72717

Honorable Michael Craig, Judge

* * * * *

THOMPSON COE COUSINS & IRONS          Counsel for Appellant,
By: Christina Anne Culver               Crum & Forster
    Kevin Risley                        Specialty Insurance
    Brian S. Martin                     Company

WEEMS SCHIMPF HAINES ET AL.
By: Carey Thomas Schimpf

LAW OFFICE OF KYLE M. ROBINSON          Counsel for Appellees
By:  Kyle M. Robinson

STEVE IRVING, LLC
By:  Stephen Miller Irving

GATTI & MERCKLE
By:  Ryan Eugene Gatti
     Emily Settle Merckle


* * * * *


Before GARRETT, STONE, and STEPHENS, JJ.

**GARRETT, J.**

The defendant, Crum & Forster Specialty Insurance Company ("C&F"), the insurer of Explo Systems, Inc. ("Explo"), appeals from a trial court judgment certifying a class action arising from an explosion that occurred near Minden, Louisiana, in October 2012, and a later voluntary evacuation of Doyline, Louisiana, which was unrelated to the explosion. For the following reasons, we reverse the trial court judgment.

## FACTS

Explo was in the business of disassembling munitions. It stored various explosives at Camp Minden, which is located near the towns of Minden and Doyline in Webster Parish. Around midnight on October 15, 2012, some of the materials ignited, causing a large explosion that was felt and heard for miles around the area. Some windows were broken in downtown Minden and some residents reported minor property damage.

In the course of investigating the blast, it was discovered that Explo was improperly storing millions of pounds of explosives. Local authorities suggested a voluntary evacuation of the Doyline area from November 30, 2012, to December 7, 2012.

On November 29, 2012, Susan Fullerton and Henry Gregory, residents of Doyline, filed a class action petition for damages, claiming physical, mental, and emotional injuries, fear, fright, discomfort and serious inconvenience, diminished property value, other economic damages to property, and loss of enjoyment of property. The petition stated that this was a class action filed on behalf of the named plaintiffs, individually and on behalf of all similarly situated individuals who fell into the following described class:

All persons and entities located or residing in, owning or leasing places of business or property in, and/or operating businesses within the geographic area of the October 15, 2012 explosion or within the November 29, 2012 evacuation area, who claim, claimed, and/or could claim that they suffered any damages, including fear, fright, discomfort, inconvenience, physical, mental and/or emotional damages, exposure or fear of exposure, bodily and/or personal injury, loss, property damage, and/or other damage under any theory of recovery, from the explosion and unsafe storage of explosives that occurred in 2012 in Webster Parish, Louisiana, and/or the resulting release, including the presence, migration, and/or dispersion of any toxic and/or noxious substance from the explosion and unsafe storage of explosives.

The petition specified that the class was located in the geographic area of Webster Parish, including all residences, business establishments, and property located within a 15-mile radius from the explosive storage facility.

The petition was subsequently amended four times to include as plaintiffs and suggested representatives of the class Rodney Broadway, Anita Darbonne, Ray Powell, and Roger Reeves, in addition to Fullerton and Gregory. C&F, an insurer of Explo, was added as a defendant. The plaintiffs asserted that Explo and C&F were *in solido* obligors.[1]

In its answers to the amended petitions, C&F denied being a solidary obligor with Explo and denied liability under the policy. C&F asserted that it had filed a suit for declaratory judgment in federal court to have Explo's policy rescinded and declared void *ab initio* because Explo made material misrepresentations concerning how it stored the explosives. C&F reserved the right to move for a stay until the coverage issues were resolved.

---

[1] The case was originally captioned "Susan Fullerton, et al. v. Explo Systems, Inc." In the third supplemental and amended class action petition, the plaintiffs asserted that they wished to amend the caption to read: Roger Reeves, Susan Fullerton, Henry Gregory, Rodney Broadway, Anita Darbonne and Ray Powell v. Explo Systems, Inc. and Crum & Forster Specialty Insurance Company.

C&F also argued that the plaintiffs had not met the requirements of La. C.C.P. art. 591 for certification of a class action. Those requirements are numerosity, commonality, typicality, adequate representation, and a definable class. In addition, the plaintiffs were required to show that common issues of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

In February 2013, the plaintiffs filed a motion for class action certification, requesting that the trial court certify the class of plaintiffs for prosecution of claims against the defendants. They claimed that the class would contain more than 300 people. They sought to have the class include all persons in the blast zone; all persons who suffered property damages as a result of the explosion, including diminution of the value of property; all businesses and business owners who suffered financial losses as a result of the explosion and evacuation; those who were evacuated from November 30, 2012, to December 7, 2012; and all persons present at the Louisiana Army Ammunition Plant when the explosion occurred, or who were considered to be in the blast zone at the time of the explosion, who suffered personal injury or property damages. The defendants asserted that the class was defined as follows:

> All persons, firms, businesses, or other entities whose person or property suffered harms and losses as a result of the October 15, 2012 explosion or the subsequent evacuation.

C&F opposed the motion for class certification, arguing that the identification of class members was vague and poorly defined, there was a fatal inconsistency between those harmed by the explosion and those affected by the evacuation, and there could not be recovery for mental

3

anguish without physical injury or other special circumstances not present here.

No determination was made at that time regarding class action certification due to extensive and prolonged proceedings in bankruptcy court and in federal court.[2]

In March 2018, the plaintiffs filed a second motion for class certification. C&F again opposed the motion, arguing that the plaintiffs sought recovery for two separate events, the explosion and the evacuation.

The plaintiffs argued that the common issue was whether there was insurance coverage for the explosion and the evacuation. According to the

---

[2] At some point in the proceedings, Explo filed for bankruptcy and an automatic stay of the proceedings was entered. On September 8, 2014, the bankruptcy court issued an order lifting the stay to permit the plaintiffs to proceed in state court against C&F alone, as insurer of Explo.

C&F and Seneca Specialty Insurance Company ("Seneca") filed suit against Explo in federal court. Richard Hayden intervened on behalf of the prospective class members in this case. The federal court noted that Hayden lives in the area surrounding Camp Minden and meets the requirements for class membership in the present state court suit, *Roger Reeves et al v. Explo Systems Inc. et al*. The federal court allowed the intervention to protect the interests of Hayden and the prospective class members in any insurance proceeds, as those interests could be adversely impacted by the outcome of the federal decision. On January 28, 2016, the federal court granted C&F's motion for summary judgment, finding that C&F and Seneca had no duty to defend or indemnify Explo for any claims by any party arising out of the explosion or evacuation. The federal court found that damages arising from the explosion did not fall within the scope of coverage of the C&F policy and damages arising from the storage of the explosives were excluded under the policy's exclusion for criminal, fraudulent, and dishonest acts. *See Crum & Forster Specialty Ins. Co. v. Explo Sys. Inc.*, 157 F. Supp. 3d 606 (W.D. La. 2016).

On December 8, 2016, the trial judge in the present case denied a motion for summary judgment filed by C&F. Apparently, C&F argued preclusion because Hayden intervened in the federal lawsuit. The trial court denied summary judgment on the issue of preclusion, finding that there was no showing that Hayden was a representative of the class or that the other members of the class were aware that Hayden was acting on their behalf. Contrary to the decision of the federal court, the trial court also found that there were genuine issues of material fact as to whether the actions of Explo were covered under the C&F policy.

4

plaintiffs, the only variable among the members of the class would be what was damaged and how long they were unable to use their property.

In December 2018, a hearing was held in the trial court on the motion to certify a class action. Gary Sexton, Webster Parish Sheriff, testified that he saw the explosion when it occurred. He described the property damage he observed in Minden the next day. He also said that, after the discovery of the improperly stored explosives, he encouraged residents of Doyline to leave the area for a short time. The plaintiffs also filed into evidence the depositions of Susan Fullerton, a potential class representative for those who experienced property damage from the explosion; James Powell, a potential representative for those who suffered business losses caused by the voluntary evacuation; and Kathryn Ruff, a potential class representative for those who experienced mental anguish as a result of the explosion and the voluntary evacuation.

On May 7, 2019, the trial court signed an order and opinion certifying the class. The court stated that judicial efficiency was the most persuasive argument for granting the motion, because allowing hundreds of cases to be filed would bog down the courts and lead to inconsistent results. The trial court found that the five factors of La. C.C.P. art. 591(A), numerosity, commonality, typicality, adequacy of representation, and a definable class, were satisfied. As to numerosity, the court found that there were approximately 300 people who would be members of the class. This finding was based upon an argument in a memorandum submitted by the plaintiffs. The court determined that this number would make it impractical for all of them to be joined as parties.

5

Regarding commonality, the trial court determined that there were common issues of law and fact. According to the court, all the claims arose out of the explosion or the evacuation, ostensibly finding that this was one event. The trial court recognized that the explosion and evacuation had two different causes, but reasoned that they were interrelated because of Explo's negligent storage practices. According to the trial court, the only difference in the claims would be the amount and kind of damage suffered.

The court found that the claims of the plaintiffs were typical of the rest of the class. Essentially the trial court found that the plaintiffs' claims were typical because they were all damage claims.

The trial court found that the class representatives were adequate and the class was objectively defined based upon "the reasons stated in the plaintiffs' motion."

The trial court limited the geographic radius of the class for property damage to within nine miles of the explosion, rather than the 15-mile radius urged by the plaintiffs. Pecuniary damages for the evacuation were limited to those living in the 71023 zip code, which is Doyline and the immediate vicinity, where law enforcement recommended a voluntary evacuation. The trial court issued an order granting the plaintiffs' motion to certify the class action and incorporated its geographic restrictions on the classes.

On June 10, 2019, C&F filed a motion to appeal the May 7, 2019, opinion and order certifying the class action. An order granting the appeal was signed on June 17, 2019.

On June 11, 2019, C&F filed a motion in the trial court to modify the class certification order. C&F questioned whether there was a single class of property damage from the explosion and evacuation claims, or whether there

6

should be two separate classes. C&F argued that the nine-mile radius for the explosion damage claims included areas far beyond Minden. It urged that the order should be amended to include claimants in Webster Parish whose property was within a six-mile radius of the explosion site and was damaged by the October 2012 explosion at Camp Minden.

C&F argued that the court should not have allowed evacuation claims from an entire zip code area. Rather, the claims should be limited to those in the suggested evacuation area.

C&F contended that class representatives should be designated for the two separate groups, the explosion and the evacuation. It pointed out that the evacuation did not occur as a result of the explosion. Rather, it was due to the discovery of millions of pounds of improperly stored explosives at Explo's storage facility at Camp Minden.

The plaintiffs opposed the motion to modify the class certification order, arguing that no class certification judgment had been signed in the matter. They asserted that C&F had taken an improper appeal from the reasons for judgment because no appealable judgment had been entered by the trial court.

On August 6, 2019, the trial court held a hearing on C&F's motion to modify the class certification. The trial court stated that it would modify the opinion to reflect that the evacuation class members in the 71023 zip code must show that they actually resided at their dwellings at the time of the evacuation. The trial court stated that the explosion class would include those within a nine-mile radius of the explosion described by latitude and longitude, if that information could be obtained. The motion to modify the order was overruled in all other respects. The trial court stated that it would

7

also designate the class representatives and class counsel in the judgment. A judgment to this effect was signed by the trial court on September 17, 2019. Susan Fullerton, James Powell, and Katheryn Ruff were appointed the class representatives. Ryan Gatti, Stephen M. Irving, and Kyle M. Robinson were appointed counsel for the class.

While those proceedings were progressing in the trial court, on August 9, 2019, the plaintiffs filed in this court a motion to dismiss C&F's appeal for lack of an appealable judgment. They argued that C&F appealed from an opinion and order of the court, not an appealable final judgment. C&F opposed the motion arguing that La. C.C.P. art. 592 allows an appeal from an order certifying a class, even if the order is not styled as a judgment.[3] It also requested a suspension of briefing delays pending the entry of the trial court's judgment modifying its order of class certification and a supplementation of the record with the pleadings, transcripts, and judgment.

On September 13, 2019, this court issued an order denying the motion to dismiss the appeal and granting C&F's motion to suspend briefing delays. We ordered the clerk of the district court to supplement the appellate record with all filings, transcripts, and orders or judgments relating to the

_____

[3] La. C.C.P. art. 592(A)(3)(c) provides:

> If the court finds that the action should be maintained as a class action, it shall certify the action accordingly. If the court finds that the action should not be maintained as a class action, the action may continue between the named parties. In either event, the court shall give in writing its findings of fact and reasons for judgment provided a request is made not later than ten days after notice of the order or judgment. *A suspensive or devolutive appeal*, as provided in Article 2081 et seq. of the Code of Civil Procedure, *may be taken as a matter of right from an order or judgment provided for herein*. [Emphasis supplied.]

modification of the appealed judgment. Briefing was suspended and was reissued after the record was completed.

## CERTIFICATION OF CLASS ACTION

On appeal, C&F argues that the trial court erred in certifying a class in this matter because the plaintiffs failed to satisfy any of the requirements to certify a class of mass tort plaintiffs set forth in La. C.C.P. art. 591. This argument has merit.

### Legal Principles

A class action is a nontraditional litigation procedure that permits a representative with typical claims to sue or defend on behalf of, and stand in judgment for, a class of similarly situated persons when the question is one of common interest to persons so numerous as to make it impracticable to bring them all before the court. *Baker v. PHC-Minden, L.P.*, 2014-2243 (La. 5/5/15), 167 So. 3d 528; *Dupree v. Lafayette Ins. Co.*, 2009-2602 (La. 11/30/10), 51 So. 3d 673; *Ford v. Murphy Oil U.S.A., Inc.*, 1996-2913 (La. 9/9/97), 703 So. 2d 542. Its purpose and intent are to adjudicate and obtain *res judicata* effect on all common issues applicable to persons who bring the action, as well as to all others similarly situated. *Baker v. PHC-Minden, L.P.*, *supra.* The class action is an exception to the rule that litigation be conducted by and on behalf of the individual named parties only. *Price v. Martin*, 2011-0853 (La. 12/6/11), 79 So. 3d 960.

Introduced into Louisiana civil procedure in 1961, and modeled after original Federal Rule 23, the Louisiana class action procedure has since been extensively revised. *See Doe v. Southern Gyms, LLC*, 2012-1566 (La. 3/19/13), 112 So. 3d 822; *Ford v. Murphy Oil U.S.A., Inc.*, *supra*; *Dupree v. Lafayette Ins. Co.*, *supra.* The Louisiana Code of Civil Procedure articles

9

governing class actions which control the present action, found in La. C.C.P. art. 591 et seq., essentially adopt current federal law regulating class actions under Fed. Rule Civ. Proc. 23, and codify the Louisiana Supreme Court's prior class certification jurisprudence. *Doe v. Southern Gyms, LLC*, *supra.*

The only issue to be considered by the trial court when ruling on certification, and by this court on review, is whether the case at bar is one in which the procedural device is appropriate. In determining the propriety of such action, the court is not concerned with whether the plaintiffs have stated a cause of action or the likelihood they ultimately will prevail on the merits, but whether the statutory requirements have been met. *Baker v. PHC-Minden, L.P.*, *supra.*

The determination of whether a class action meets the requirements imposed by law involves a rigorous analysis in which the trial court must evaluate, quantify, and weigh the relevant factors to determine to what extent the class action would, in each instance, promote or detract from the goals of effectuating substantive law, judicial efficiency, and individual fairness. *Baker v. PHC-Minden, L.P.*, *supra; Dupree v. Lafayette Ins. Co.*, *supra. See also Doe v. Southern Gyms, LLC*, *supra*; *McCastle v. Rollins Environmental Services of La., Inc.*, 456 So. 2d 612 (La. 1984). The trial court must actively inquire into every aspect of the case and not hesitate to require showings beyond the pleadings. Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues. *Baker v. PHC-Minden, L.P.*, *supra*; *Dupree v. Lafayette Ins. Co.*, *supra.*

10

Any errors to be made in deciding class action issues should be in favor of and not against the maintenance of the class action, because a class certification order is always subject to modification or decertification, if later developments during the course of the trial so require. *Baker v. PHC-Minden, L.P.*, *supra*. To that end, La. C.C.P. art. 592(A)(3)(d) provides that the trial court "may alter, amend, or recall its initial ruling on certification and may enlarge, restrict, or otherwise redefine the constituency of the class or the issues to be maintained in the class action." Nonetheless, the trial court should evaluate the case closely before certifying the class in light of the consequent burdens of giving notice and additional discovery. *Baker v. PHC-Minden, L.P.*, *supra*; *Dupree v. Lafayette Ins. Co.*, *supra*. While any errors to be made in deciding class action issues should, as a general rule, be in favor of, and not against, the maintenance of the class action, because a class certification is always subject to modification or decertification if later developments so require, that general rule cannot and should not be used as a substitute for the rigorous analysis required to determine whether the prerequisites of Louisiana's class action provisions have, in fact, been satisfied. *Price v. Martin*, *supra*.

A trial court has wide discretion in deciding whether to certify a class. *Baker v. PHC-Minden, L.P.*, *supra*. Subject to the manifest error standard, its factual findings can only be reversed upon finding, based on the entire record, no reasonable factual basis for the factual finding and the factfinder is clearly wrong. *Stobart v. State, through Department of Transp. and Dev.*, 617 So. 2d 880 (La. 1993). However, we review its ultimate decision of whether or not to certify the class under the abuse of discretion standard. Implicit therein is recognition of the essentially factual basis of the

11

certification inquiry and of the district court's inherent power to manage and control pending litigation. *Baker v. PHC-Minden, L.P.*, *supra; Doe v. Southern Gyms, LLC*, *supra*.

Under Louisiana law, the requirements for class certification are set forth in La. C.C.P. art. 591. *Baker v. PHC-Minden, L.P.*, *supra.* La. C.C.P. art. 591(A) provides five threshold prerequisites, often referred to as numerosity, commonality, typicality, adequacy of representation, and objective definability of class. That portion of the statute provides:

> A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
>
> (1) The class is so numerous that joinder of all members is impracticable.
>
> (2) There are questions of law or fact common to the class.
>
> (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
>
> (4) The representative parties will fairly and adequately protect the interests of the class.
>
> (5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case. This prerequisite shall not be satisfied if it is necessary for the court to inquire into the merits of each potential class member's cause of action to determine whether an individual falls within the defined class.

Each of these requirements must be met for an action to be maintained as a class action; failure to meet one of these threshold requirements precludes class certification. La. C.C.P. art. 591(B); *Doe v. Southern Gyms, LLC*, *supra*. The party seeking to maintain the class action bears the burden of proving that the statutory class certification criteria have been satisfied. *Dupree v. Lafayette Ins. Co.*, *supra*; *Marsh v. USAgencies Cas. Ins. Co.*,

42,176 (La. App. 2 Cir. 5/16/07), 957 So. 2d 901, *writ denied*, 2007-1286 (La. 10/26/07), 966 So. 2d 575; *Howard v. Willis-Knighton Med. Ctr.*, 40,634 (La. App. 2 Cir. 3/8/06), 924 So. 2d 1245, *writ denied*, 2006-0850 (La. 6/14/06), 929 So. 2d 1268, and *writ denied*, 2006-1064 (La. 6/14/06), 929 So. 2d 1271.

Once the five prerequisites of La C.C.P. art. 591(A) have been met, La. C.C.P. art. 591(B) lists three additional criteria, one of which must also be satisfied for certification, depending on the type of class action sought. *Baker v. PHC-Minden, L.P.*, *supra*; *Dupree v. Lafayette Ins. Co.*, *supra*. Often, the additional requirement that must be met for certification is set forth in La. C.C.P. art. 591(B)(3), which provides:

> (3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
>
> (a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
>
> (b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
>
> (c) The desirability or undesirability of concentrating the litigation in the particular forum;
>
> (d) The difficulties likely to be encountered in the management of a class action;
>
> (e) The practical ability of individual class members to pursue their claims without class certification;
>
> (f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation.

13

The legislature has specifically provided, emphasizing the commonality and predominance requirements, that class certification shall not be for the purpose of adjudicating claims or defenses dependent for their resolution on proof individual to a member of the class. *See* La. C.C.P. art. 591(C); *Baker v. PHC-Minden, L.P.*, *supra*. Nevertheless, where certification is maintained, "the court shall retain jurisdiction over claims or defenses dependent for their resolution on proof individual to a member of the class." La. C.C.P. art. 591(C). Thus, the mere fact that varying degrees of damages may result from the same factual transaction and same legal relationship, or that class members must individually prove their right to recover, does not preclude class certification. *Baker v. PHC-Minden, L.P.*, *supra*; *Bartlett v. Browning-Ferris Industries Chem. Servs., Inc.*, 99-0494 (La. 11/12/99), 759 So. 2d 755.

### *Numerosity*

The first prerequisite for class certification, often referred to as "numerosity," is determined based upon the facts and circumstances of each individual case. This requirement reflects the basic function of the class action as a device for allowing a small number of persons to protect or enforce rights or claims for the benefit of many where it would be inequitable and impracticable to join every person sharing an interest in the rights or claims at issue in the suit. *Baker v. PHC-Minden, L.P.*, *supra*.

In keeping with the fact that this is an impracticability of joinder rule, and not merely a numbers requirement, there is no strict numerosity threshold. In other words, there is no set number above which a class is considered to have satisfied this requirement. *Doe v. Southern Gyms, LLC*, *supra*. *See also Baker v. PHC-Minden, L.P.*, *supra*; *Dumas v. Angus Chem.*

14

*Co.*, 25,632 (La. App. 2 Cir. 3/30/94), 635 So. 2d 446, *writ denied*, 1994-1120 (La. 6/24/94). The numerosity element may not be met by simply alleging that a large number of potential claimants exist. While the determination of numerosity is, in part, based upon the number of putative class members, it is also based upon considerations of judicial economy in avoiding a multiplicity of lawsuits, financial resources of class members, and the size of the individual claim. Ultimately, to meet this requirement, the plaintiff must show that joinder is impractical, but, at the same time, there is a definable group of aggrieved persons. *Baker v. PHC-Minden, L.P.*, *supra*; *Doe v. Southern Gyms, LLC*, *supra*. While there must be proof of a definable group of aggrieved persons, a plaintiff is not required to identify every member of the potential class prior to certification. *Doe v. Southern Gyms, LLC*, *supra*.

As mentioned above, at the hearing in this matter, the plaintiffs presented the live testimony of Sheriff Sexton, and the depositions of Ms. Fullerton, James Powell, and Ms. Ruff. Documents from federal and state proceedings were introduced, together with the C&F insurance policy endorsements, as well as interrogatories and the responses thereto.

Sheriff Sexton testified that on the evening of the explosion in October 2012, he was returning from a hunting trip in Colorado and saw the flash when the explosion occurred. The sheriff, who did not have access to Camp Minden, searched for the site of the explosion until 4:30 a.m., but could not find it. Sheriff Sexton stated that his department received numerous reports of property damage, but no reports of injuries. He said that the dispatchers should have records of the calls about property damage, but he did not have any records of the reports. No records were introduced

15

at the hearing.  Regarding property damage, Sheriff Sexton said that he observed some broken glass in downtown Minden, but he could not say how many buildings were damaged.  He eventually said that "several" buildings were damaged.

After the explosion and the discovery of the improperly stored explosives, a series of town hall meetings was held to keep the public informed.  Sheriff Sexton recommended that the residents of Doyline leave the area for a one-week period from November 30 to December 7, 2012, but there was no mandatory evacuation.  No roads into or out of the area were closed.  Sheriff Sexton said the town of Doyline was not essentially evacuated.  According to the sheriff, "We didn't ask them to evacuate.  We just told them what they were up against, and it was up to them what they wanted to do at that time."

Ms. Fullerton testified in her deposition that, at the time of the 2012 explosion and the voluntary evacuation, she lived in Doyline, approximately 2½ miles from Camp Minden.  At that time, she was employed as a paralegal for Mr. Robinson, one of the plaintiff attorneys in this matter.  When the explosion occurred, her house rattled, and there was a tremor in the ground, but it was not violent.  No windows were broken.  She claimed that the explosion caused some cracks in the Sheetrock in the master bedroom and bathroom.  There was a gap where the ceiling and wall met, and there were cracks over the doors to the bedroom and bathroom.  She did not have the damage repaired.  She had no idea how much the repairs would cost and never had anyone look at the damage.  Ms. Fullerton said the damage was not significant enough to make a claim on her homeowner's

16

insurance. She said that, at the time, she took pictures of the damage on her cellphone, but she did not save the pictures.

At the time Ms. Fullerton gave her deposition in November 2018, she was not living in the house. In 2016, the house was flooded due to excessive rainfall in the area. Ms. Fullerton did not repair the house after the flood.

Ms. Fullerton said that she did not experience any fear or anxiety from the explosion or the voluntary evacuation. She had no knowledge of any businesses in Doyline that closed as a result of the voluntary evacuation. She stated that there were not very many businesses in the area. Ms. Fullerton said that she did not know of any others who suffered property damage as a result of the explosion or how many people would be a part of the class action. She said she thought 500 to 600 people would be involved.

In his deposition, James Powell said he was not a named plaintiff in this matter, but was appearing as a representative for his parents, Ray and Elinor Powell, who owned Powell's Grocery. James was the manager of the store. The store was located approximately one mile from Camp Minden. There was no structural damage to the building as a result of the explosion. The Powells sought damages for loss of business and for food and lodging during the voluntary evacuation. They claimed that these damages totaled $12,408.31. The store was closed from November 30 to December 7, 2012, during the voluntary evacuation. Immediately before the store closed, Powell stated that he did not see an increase in business with people gassing up vehicles before leaving the area. Regarding the voluntary evacuation, he stated, "Because it wasn't just an immediate everybody fled town." He did not know of any other businesses that closed during that time. He said that Powell's Grocery was the main business in the area, and, as far as he knew,

17

their store was the only business claiming loss of business damages. He stated that he did not know of anyone else who would be involved in the class action suit. The business closed permanently in September 2017. Mr. Powell said that he did not attribute the closing to the events in 2012, but rather, to the opening of a Dollar General store in the area.

In her deposition, Ms. Ruff, a proposed class representative for those who suffered mental anguish as a result of the explosion and voluntary evacuation, testified that she heard the explosion, but did not suffer any property damage. She stated that she attended several town hall meetings and was worried about the possibility of another explosion. She left the area during the voluntary evacuation and sought recovery for lodging and food expenses during that time. However, she had thrown away all her receipts concerning those expenses.

She lost some sleep during the couple of weeks after the explosion, but she did not take any medication or see any doctors because of the way she felt. She did not see any therapists or go to counseling.

Ms. Ruff did not know how many others would be potential members of the class action. Although she thought the potential class would include everyone in Minden and Doyline, she could not even say if any of her neighbors were claiming damages from the explosion or the voluntary evacuation.

The evidence presented by the plaintiffs is simply insufficient to satisfy the numerosity requirement of La. C.C.P. art. 591(A). The plaintiffs were required to show that the class is so numerous that joinder of all the members is impractical. The plaintiffs alleged that the class would contain

approximately 300 people. The numerosity requirement is not satisfied by simply alleging that a large number of potential claimants exist.

Ms. Fullerton speculated that several hundred people were damaged, but she did not personally know of any others who suffered damage. Sheriff Sexton said he observed broken glass in "several" businesses in downtown Minden. He did not say that the observable property damage was widespread. There was no showing of how many claims for property damage from the explosion had been filed. Regarding business losses, James Powell testified that he was not aware of any other businesses claiming business losses. He said that there were not many businesses in Doyline and his family's business was the main one. Regarding those who suffered mental anguish as a result of the explosion and voluntary evacuation, Ms. Ruff said that she was not aware of any others who were making similar claims.

Although Ms. Fullerton, Ms. Ruff, and James Powell, on behalf of his parents, claimed reimbursement for lodging and food during the voluntary evacuation, there was no showing of how many other people would have similar claims. Sheriff Sexton was clear that there was no mandatory evacuation and the roads into and out of the area were not closed. Residents of the area had the choice to remain in their homes. The plaintiffs failed to show what the population of Doyline was, how many people were permanent residents of the town, or how many people actually decided to leave during the voluntary evacuation. The plaintiffs also failed to show that numerous others had filed damage suits or otherwise expressed interest in making claims for damages allegedly caused by the explosion or voluntary evacuation.

Simply stated, the plaintiffs failed to show that there is a large number of people claiming damages as a result of the 2012 explosion and voluntary evacuation who were potential members of this class action. Based upon this paucity of proof, the plaintiffs have failed to satisfy the numerosity requirement necessary for certification of a class action. In its opinion, the trial court stated that it based its decision that the numerosity prerequisite was satisfied upon statements made in the memorandum filed by the plaintiffs. Numerosity may not be established by bare allegations. The trial court was manifestly erroneous in finding that the numerosity requirement had been satisfied and abused its discretion in certifying a class action in this case.

As set forth above, all five requirements of La. C.C.P. art. 591(A) must be met before a class action may be properly certified. Although the failure to satisfy the numerosity requirement is fatal to the class action certification sought by the plaintiffs, in the interest of thoroughness, we will examine the remaining requirements of La. C.C.P. art. 591.[4]

---

[4] Where the numerosity requirement is not met, our courts have properly declined to certify a class action. *See Doe v. Southern Gyms, LLC*, *supra*; *Sullivan v. Park*, 2019-0086 (La. App. 4 Cir. 5/22/19), ___ So. 3d ___, 2019 WL 2223620; *Doe v. Univ. Healthcare Sys., L.L.C.*, 2013-1457 (La. App. 4 Cir. 7/9/14), 145 So. 3d 557; *Bagot v. James Holdings, LLC*, 17-121 (La. App. 5 Cir. 12/20/17), 235 So. 3d 1330, *writ denied*, 2018-0124 (La. 3/9/18), 238 So. 3d 451; *Fontcuberta v. Cleco Corp.*, 2016-1477 (La. App. 1 Cir. 6/2/17), 222 So. 3d 235. In contrast, the following cases provide examples of the kind of proof sufficient to establish numerosity: *Dumas v. Angus Chem. Co.*, *supra*; *Lillie v. Stanford Tr. Co.*, 2013-1995 (La. App. 1 Cir. 11/1/17), 235 So. 3d 1139; *Boyd v. Allied Signal, Inc.*, 2003-1840 (La. App. 1 Cir. 12/30/04), 898 So. 2d 450, *writ denied*, 2005-0191 (La. 4/1/05), 897 So. 2d 606; *Opelousas Gen. Hosp. Auth. v. Louisiana Health Serv. & Indem. Co.*, 2019-736 (La. App. 3 Cir. 11/12/19), 283 So. 3d 619; *Gibson v. Nat'l Healthcare of Leesville, Inc.*, 2018-710 (La. App. 3 Cir. 3/7/19), 270 So. 3d 664, *writ denied*, 2019-0555 (La. 5/28/19), 273 So. 3d 316; *Desselle v. Acadian Ambulance Serv., Inc.*, 2011-742 (La. App. 3 Cir. 2/1/12), 83 So. 3d 1243, *writ denied*, 2012-0518 (La. 4/13/12), 85 So. 3d 1253.

## *Commonality*

The commonality prerequisite requires a party seeking class certification to show that there are questions of law or fact common to the class. *See* La. C.C.P. art. 591(A)(2). This language is easy to misread, since any competently crafted class complaint literally raises common questions. *Price v. Martin, supra.* The mere existence of common questions alone will not satisfy the commonality requirement. Rather, plaintiffs seeking to satisfy this requirement must demonstrate that their claims depend on a common contention, and that common contention must be one capable of classwide resolution – one where the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. *Baker v. PHC-Minden, L.P., supra*; *Price v. Martin, supra*.

To satisfy the commonality requirement, there must exist, as to the totality of the issues, a common nucleus of operative facts. A common question is one that, when answered as to one class member, is answered as to all of them. *Price v. Martin, supra*; *Dupree v. Lafayette Ins. Co., supra*; *Smith ex rel. Upchurch v. McGuire Funeral Home, Inc.*, 46,326 (La. App. 2 Cir. 6/1/11), 70 So. 3d 873; *writ denied*, 2011-1419 (La. 9/30/11), 71 So. 3d 290, and *writ denied*, 2011-1454 (La. 9/30/11), 71 So. 3d 297.

As part of the analysis of commonality and predominance in mass tort cases, the supreme court has held that only mass torts arising from a common cause or disaster may be appropriate for class certification. Causation is an essential part of the liability determination and, if causation is not the same for each plaintiff, individual trials on causation would be required, which would defeat the purpose of the class action device. *Brooks v. Union Pac. R. Co.*, 2008-2035 (La. 5/22/09), 13 So. 3d 546.

21

In requiring common causation in a mass tort case, the supreme court has stated that this does not mean that the amount or extent of damages must be common to all class members. The mere fact that varying degrees of damages may result from the same factual transaction and same legal relationship or that class members must individually prove their right to recover does not preclude class certification. *Bartlett v. Browning-Ferris Industries Chem. Servs., Inc.*, *supra*; *Brooks v. Union Pac. R. Co.*, *supra*. However, in order to meet the common cause requirement, each member of the class must be able to prove individual causation based on the same set of operative facts and law that would be used by any other class member to prove causation. *Brooks v. Union Pac. R. Co.*, *supra*; *Price v. Martin*, *supra*.

To satisfy the commonality requirement, the plaintiffs were required to show that the claims asserted arose from a common cause or disaster.[5] Causation must be the same for all class members with the same set of operative facts and law. The record here shows that the plaintiffs have failed to establish that there are questions of law and fact common to the class. The plaintiffs are seeking damages for two separate, distinct, and unrelated events. The explosion occurred in October 2012 and allegedly resulted in property damage. The voluntary evacuation occurred several weeks later, in November and December 2012, not as a result of the explosion, but as the result of the discovery of improperly stored explosives at the Explo facility.

---

[5] The plaintiffs argued in the trial court that all claimed damages arose from a common disaster and cited *Daniels v. Witco Corp.*, 03-1478 (La. App. 5 Cir. 6/1/04), 877 So. 2d 1011, *writ denied*, 2004-2283 (La. 11/19/04), 888 So. 2d 204, and *writ denied*, 2004-2287 (La. 11/19/04), 888 So. 2d 205, and *Rivera v. United Gas Pipeline Co.*, 613 So. 2d 1152 (La. App. 5 Cir. 1993), in support of their argument. Both *Daniels* and *Rivera* involved only a single common causative event, unlike the facts presented in the present case.

Those allegedly suffering property damage from the explosion have an entirely different source of causation than those claiming damages from the voluntary evacuation.  There is no common cause or disaster between these two disparate groups of potential class action members and there is no common nucleus of operative facts.

The plaintiffs, who originally pled that their damages were caused by the explosion and/or the voluntary evacuation, later argued that the common question or issue in this case is whether the C&F insurance policy provides coverage for damages arising from these two separate events.  The plaintiffs maintain that the denial of the use of property claimed by the evacuation claimants is a common claim for property damage.  We reject this argument. The resolution of the question of whether insurance coverage exists, for one or both of these separate events, may differ depending on the different facts and the different provisions in the insurance policy.  Proof of coverage for one event may not necessarily prove coverage for the other event.  The existence or nonexistence of insurance coverage is not the type of common cause or disaster necessary to demonstrate commonality.  Based upon the facts presented here, there are simply not common issues of law and fact as to all members of the proposed class.

This case is analogous to *Brooks v. Union Pac. R. Co.*, *supra*, in which property owners filed a mass tort class action petition for damages arising from the flooding of their property located on one side of a railroad track.  They alleged that three storm water drainage structures underneath the railroad track were inadequately designed and maintained, resulting in the flooding of their property.  The plaintiffs claimed that several different areas were flooded as a result of the actions of the railroad, city, parish, and

23

state.  The evidence at the certification hearing showed that the flooding occurred in three different areas.  The supreme court found that there was not a common cause for each class member, and, therefore, certification of a class action was not appropriate.[6]

The trial court specifically found that all claims in this matter arose from the explosion in October 2012, "and the resulting damage and evacuation from the surrounding area."  The record does not support this view, but rather shows that the voluntary evacuation was not caused by the explosion, but was a separate event.  Because two separate events caused the plaintiffs' alleged harm, the trial court was manifestly erroneous in finding that there were common questions of law and fact in this matter sufficient to certify a class action.

### *Typicality*

The third prerequisite of La. C.C.P. art. 591(A) is a showing of whether the claims or defenses of the representative parties are typical of the claims or defenses of the class.  La. C.C.P. art. 591(A)(3).  This element requires a determination of whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.  A plaintiff's claim is typical if it rises out of the same event, practice, or course of conduct giving rise to the claims of the other class members and those claims arise from the same legal theory.  *Baker v. PHC-*

---

[6] In *Brooks*, the supreme court remanded the case for a determination of whether separate class actions could be sustained.  In that case, the numerosity prerequisite was satisfied, unlike the present matter.  Because the plaintiffs here failed to satisfy the numerosity prerequisite, as well as the commonality prerequisite, we decline to remand.

*Minden, L.P., supra*; *Smith ex rel. Upchurch v. McGuire Funeral Home, Inc., supra*; *Marsh v. USAgencies Cas. Ins. Co., supra.*

Here, because the plaintiffs allege damage arising from two separate events, they have failed to show that the requirement of typicality has been satisfied. Because the claims are not based on the same event, practice, or course of conduct, the proposed class representatives have not shown that their claims are typical of the claims or defenses of the entire class. The trial court erred in finding that this prerequisite for class certification was satisfied.

### *Adequacy of Representation*

The fourth prerequisite of La. C.C.P. art. 591(A) that the plaintiffs must establish is whether the representative parties will fairly and adequately protect the interest of the class. The following are factors which may be relevant to this inquiry:

> (1) The representative must be able to demonstrate that he or she suffered an actual—vis-à-vis hypothetical—injury;
>
> (2) The representative should possess first hand knowledge or experience of the conduct at issue in the litigation;
>
> (3) The representative's stake in the litigation, that is, the substantiality of his or her interest in winning the lawsuit, should be significant enough, relative to that of other class members, to ensure that representative's conscientious participation in the litigation; and
>
> (4) The representative should not have interests seriously antagonistic to or in direct conflict with those of other class members, whether because the representative is subject to unique defenses or additional claims against him or her, or where the representative is seeking special or additional relief.

See *Baker v. PHC-Minden, L.P., supra*, and cases cited therein. *See also*

*Rabun v. St. Francis Med. Ctr., Inc.*, 52,658 (La. App. 2 Cir. 6/26/19), 277

So. 3d 445, *writ denied*, 2019-01426 (La. 11/5/19), 281 So. 3d 674; *Smith ex rel. Upchurch v. McGuire Funeral Home, Inc.*, *supra*; *Marsh v. USAgencies Cas. Ins. Co.*, *supra*.

One of the factors considered in determining adequacy of representation is that the representative parties should not have interests seriously antagonistic to or in direct conflict with other class members. The response to interrogatories introduced at the hearing shows that the plaintiffs aver that the insurance policy limits in this matter are $2,000,000 per occurrence, with an aggregate limit of $4,000,000. The response provides that the plaintiffs are seeking recovery based upon two separate occurrences. The interests of those plaintiffs seeking recovery for damages arising from the explosion may have interests in conflict with those seeking damages arising from the voluntary evacuation. The trial court erred in finding that this element of La. C.C.P. art. 591(A) was satisfied.

### *Definability*

Under the final prerequisite, the plaintiffs were required to show that the class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment rendered in the case. La. C.C.P. art. 591(A)(5). *Baker v. PHC-Minden, L.P.*, *supra*. The class definition requirement ensures that the class is not amorphous, indeterminate, or vague, so that any potential class member can readily determine if he or she is a member of the class. *Smith ex rel. Upchurch v. McGuire Funeral Home, Inc.*, *supra*.

In this matter, no one class may be defined objectively because the claimed damages arose from two entirely separate events. The attempts by

26

the trial court to define a single class in this case demonstrate the difficulty of that task.  The trial court set forth different and distinct class criteria for those who allegedly suffered property damage from the explosion and those who allegedly incurred damages from the voluntary evacuation.  Because the plaintiffs have different causes for their damages, they are not a single class.  Due to the lack of commonality in the causation of their damages, the plaintiffs are not subclasses of one class.  The trial court erred in finding that an objectively definable class existed in this case.

### *Predominance and Superiority*

Additionally, La. C.C.P. art. 591(B)(3) provides that "[t]he court [must find] that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  The inquiry into predominance tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation.  *Price v. Martin*, *supra*; *Dupree v. Lafayette Ins. Co.*, *supra*.  The supreme court has explained that "the predominance requirement is more demanding than the commonality requirement, because it entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials."  *Alexander v. Norfolk S. Corp.*, 2011-2793 (La. 3/9/12), 82 So. 3d 1234; *Price v. Martin*, *supra*; *Dupree v. Lafayette Ins. Co.*, *supra*; *Brooks v. Union Pac. R. Co.*, *supra*.

A three-step analysis is generally used to assess whether common issues predominate.  This analysis requires the court to identify the

27

substantive elements of the cause of action, to consider the proof necessary to meet the plaintiffs' burden of proof as to those elements, and to evaluate the alternative procedural mechanisms for adjudicating the case in terms of promoting judicial economy. *Smith ex rel. Upchurch v. McGuire Funeral Home, Inc.*, *supra*. Additionally, La. C.C.P. art. 591(B)(3)(a)-(f) sets forth six considerations to be weighed in determining whether the predominance and superiority requirements are satisfied. *See Price v. Martin*, *supra*; *Dupree v. Lafayette Ins. Co.*, *supra*.

In its opinion, the trial court did not discuss the requirements of La. C.C.P. art. 591(B). However, because the trial court was manifestly erroneous in determining that the plaintiffs satisfied the commonality prerequisite of La. C.C.P. art. 591(A), we must logically conclude that substantial questions of law and fact common to the class will not predominate over questions affecting only individual members. As with the commonality determination, and for the same reasons, we find that the predominance requirement has not been satisfied in this case. *See Price v. Martin*, *supra*.

## CONCLUSION

For the reasons stated above, we find that the trial court was manifestly erroneous in finding that the prerequisites for La. C.C.P. art. 591, necessary for certification of a class action, were satisfied in this case. The trial court abused its discretion in certifying a class action. The trial court judgment is reversed. Costs in this matter are assessed to the plaintiffs.

**REVERSED**.

28